UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C., et al.,<br>　　　　　　　　　　Plaintiffs,<br>v.<br>Rady Children's Hospital, et al.,<br>　　　　　　　　　　Defendants. | Case No.: 17-cv-0846-AJB-JLB<br><br>**ORDER:**<br>**GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. No. 14);**<br><br>**GRANTING DEFENDANTS' MOTION FOR SANCTIONS (Doc. No. 28); and**<br><br>**GRANTING DEFENDANT SAUNDERS' MOTION TO DISMISS (Doc. No. 25).** |

There are three related motions before the Court: (1) defendants Rady Children's Hospital's and Dr. Susan Duthie's motion to dismiss, (Doc. No. 14); (2) Rady's and Duthie's motion for Rule 11 sanctions, (Doc. No. 28); and (3) defendant Ryan Saunders' motion to dismiss, (Doc. No. 25). For the reasons discussed herein, the Court **GRANTS** both motions to dismiss, (Docs. No. 14, 25), and **GRANTS** defendants' motion for sanctions, (Doc. No. 28).

## I. BACKGROUND

Plaintiffs' lawsuit stems from a criminal proceeding in San Diego Superior Court in which plaintiffs' father, Azael Chavez, was convicted for felony child abuse. (Doc. No. 14 at 6.) Plaintiffs are twin children. (*Id.*) During the course of their medical treatment at Rady Children's Hospital, treating physicians suspected child abuse and reported it—as

1

mandated under law. (*Id.*) Chavez sued defendants twice in Superior Court, once for failing to produce medical records, and once for various causes of action including a breach of fiduciary duties. (*Id.*) Plaintiffs voluntarily dismissed the first case after Rady moved for sanctions. (*Id.*) During the second case, defendants moved to strike all allegations under the anti-SLAPP statute because the treating physicians who reported the suspected child abuse were protected. (*Id.*) The Court tentatively ruled in favor of defendants, but plaintiffs again withdrew the case before the Court held a hearing. (*Id.*) The Superior Court ordered sanctions against plaintiffs' attorney and Chavez. (*Id.*) Plaintiffs then filed the instant suit in federal court.

In the first amended complaint ("FAC"), plaintiffs bring five causes of action: (1) RICO, (2) conspiracy to violate RICO, (3) conspiracy to interfere with civil rights, under 42 U.S.C. § 1985(2), (4) conspiracy to interfere with civil rights, under 42 U.S.C. § 1985(3), and (5) declaratory judgment. (Doc. No. 11.)

## II. LEGAL STANDARDS

A Rule 12(b)(6) motion to dismiss tests a complaint's legal sufficiency. Fed. R. Civ. P. 12(b)(6). The Court must accept the complaint's allegations as true and construe all reasonable inferences in favor of the nonmoving party, but is not required to accept "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a dismissal at this stage, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 8(a)(2) (stating a party's pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."). In addition, complaints alleging fraud must satisfy Rule 9(b)'s heightened pleading requirements, particularly stating "the time, place[,] and specific content of the false representations as well as the identities of the parties to the misrepresentation." Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

## III. MOTIONS TO DISMISS

Defendants Rady and Duthie (collectively, Rady) move to dismiss plaintiffs' FAC, arguing the action is barred under *Heck v. Humphrey* as an improper collateral attack on Chavez's conviction.[1] (Doc. No. 14.) Specifically, Rady argues "[p]laintiffs' action is barred because it is an impermissible collateral attack that necessarily implies that Mr. Chavez's criminal charges and subsequent conviction for felony child abuse are invalid." (*Id.* at 11.) Plaintiffs respond that *Heck*'s holding only applies to 42 U.S.C. § 1983 cases, which theirs is not. (Doc. No. 17 at 26.)

A plaintiff cannot seek damages in a § 1983 suit if success on that claim would "necessarily imply the invalidity of his conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). If a claim negates elements of the convicted offense or makes factual allegations inconsistent with the conviction, it is barred. *Cunningham v. Gates*, 312 F.3d 1148, 1154 (9th Cir. 2002). Federal courts are split as to *Heck*'s application to RICO claims. In one case, the Ninth Circuit found the district court properly dismissed plaintiff's RICO claims under *Heck*. *Oberg v. Asotin Cnty*, 310 F. App'x 144, 145–46 (9th Cir. 2009). Other district courts within the Ninth Circuit have applied *Heck*'s bar to RICO claims. *Katakis v. Chandler*, No. 2:15-02526 WBS KJN, 2016 WL 1056962, at *2 (E.D. Cal. Mar. 17, 2016); *Franco v. City and Cnty of San Francisco*, No. C 10–04768 WHA, 2012 WL 3010953, at *3 (N.D. Cal. July 23, 2012) ("The rationale of *Heck* applies to RICO and conspiracy claims."); *Bhatia v. Wig*, No. C-10-0072 SBA, 2010 U.S. Dist. LEXIS 95782 (N.D. Cal. Sep. 14, 2010); *Boulware v. Dep't of Ins.*, Civ. No. 09-4325-R(E) MLR, 2009 WL 3271060, at *5 (C.D. Cal. Oct. 8, 2009) ("*Heck* also applies to RICO claims."); *Garcia v. Scribner*, Civ. No. 97-0742 CRB, 1998 WL 397895, at *2 (N.D. Cal. July 10, 1998)

---

[1] Rady and Saunders also argue the complaint's dismissal is appropriate as it fails to state a claim, is collaterally estopped, is barred by *Rooker-Feldman*, and a number of other arguments. However, because the Court finds *Heck* bars all plaintiffs' claims, the Court will not discuss those arguments.

3

(finding *Heck* "applies with equal force to civil RICO claims"); *but see Curry v. Baca*, 497 F. Supp. 2d 1128, 1135 (C.D. Cal. July 23, 2007) ("the Court refuses to adopt the same conclusion in light of *Heck's* specific application to Section 1983 cases."); *Hunter v. Gates*, No. CV99–12811, 2001 WL 837697, at *3–4 (C.D. Cal. Apr. 16, 2001) (holding the *Heck* rule does not apply to civil RICO claims).

Other circuits have also applied *Heck*'s holding to RICO claims. *Swan v. Barbadoro*, 520 F.3d 24, 26 (1st Cir. 2008); *Rouser v. Johnson*, No. 94-30013, 1994 WL 523784, at *4 (5th Cir. 1994) ("Otherwise, henceforth plaintiffs like Rouser would simply couch their allegations under RICO in order to avoid the bar of *Heck* . . . ."); *Paulus v. Light*, No. 96-2355, 1994 WL 461498, at *1 (6th Cir. 1997) ("Paulus's civil RICO claim is likewise barred by *Heck*."); *Alexander/Ryahim v. Monroe*, 326 Fed. App'x 977, 978 (8th Cir. 2009). This Court agrees with the principle of *Heck*'s application to RICO claims. A plaintiff cannot avoid the *Heck* bar simply by couching his complaints about an underlying valid criminal conviction in a RICO claim.

Plaintiffs' RICO theory is similar to that made by the plaintiff in *Bhatia*. 2010 U.S. Dist. LEXIS 95782. Bhatia was convicted and sentenced for mail fraud and money laundering. *Id.* at *6. Bhatia filed a complaint alleging, among other claims, racketeering and conspiracy to violate RICO. *Id.* at *9. The district court held "Bhatia's RICO claim is barred under *Heck*" because it is "predicated upon allegations that [defendant] provided false information and engaged in fraudulent conduct [ ] aimed at securing his allegedly unjustified indictment and conviction . . . ." *Id.* at *19–*20. The Court found he could not "prevail on his civil RICO claim without undermining the propriety of the criminal indictment . . . ." *Id.* at *20–*21.

Here, plaintiffs' complaint is deeply entrenched in allegations of fraudulent conduct during Chavez's criminal proceeding. (*See* Doc. No. 11.) Plaintiffs claim the prosecutor and other defendants in the instant action withheld evidence, tampered with medical records, fabricated evidence, participated in a criminal conspiracy to convict Chavez, engaged in racketeering activity, acted in concert with the superior court judge to obstruct

4

justice, and conspired to secretly prevent doctors from testifying. (Doc. No. 11 ¶¶ 26, 31–33, 36, 42–43, 51–52, 56–57, 63, 64.) Plaintiffs also argue racial animus against Chavez throughout the deepest levels of government. (*Id.* ¶¶ 64, 68, 72.)

Yet, plaintiffs cannot prevail on any claim before this Court without undermining the state court's criminal proceedings and the legitimacy of Chavez's conviction. For example, to win on the RICO claim, plaintiffs would have to show (among other elements) a pattern of racketeering activity (known as predicate acts). *Sigmond v. Brown*, 828 F.2d 8, 8 (9th Cir. 1987). The alleged predicate acts include that Rady and its doctors fabricated evidence, violating Cal. Penal Codes § 118 and § 4715, altered false medical records with intent to defraud, violating 18 U.S.C. § 1961(1), and committed wire fraud under 18 U.S.C. § 1241. Each of the predicate acts, if true, would undermine Chavez's criminal proceedings because it would invalidate the evidence presented at trial and show that the parties in trial acted fraudulently.

To put it simply, if plaintiffs succeeded on their RICO claim (or any other) in this Court, it would indisputably cast doubt on the legitimacy of Chavez's trial and imply the invalidity of his conviction—an action specifically prohibited by *Heck*. Thus, the Court finds plaintiffs' claims are barred and **GRANTS** defendants' dismissal motions. (Docs. No. 14, 25.)

### IV. MOTION FOR SANCTIONS

Rady also brings a motion for Rule 11(b) sanctions against plaintiffs' attorney, Genaro Lara, in the amount of $11,051.00. (Doc. No. 28-1 at 6.) Lara did not oppose the motion.

"An attorney is subject to Rule 11 sanctions, among other reasons, when he presents to the court 'claims, defenses, and other legal contentions . . . [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]'" *Holgate v. Baldwin*, 425 F.3d 671, 676–77 (9th Cir. 2005) (citing Fed. R. Civ. P. 11(b)(2)). When a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1)

5

whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotations and citation omitted). In this context, "frivolous" means that a filing "is *both* baseless *and* made without a reasonable and competent inquiry." *Moore v. Keegan Mgmt. Co. (In re Keegan Mgmt. Co., Sec. Litig.)*, 78 F.3d 431, 434 (9th Cir. 1996).

Rady did not address this two-part test. Instead, Rady argued sanctions are appropriate because the FAC was barred by the *Colorado River* doctrine, collateral estoppel, and the *Rooker-Feldman* doctrine. (Doc. No. 28-1 at 11.) Because the Court finds sanctions are appropriate on the basis of the Ninth Circuit two-part test and under the *Colorado-River* doctrine, the Court declines to discuss collateral estoppel or the *Rooker-Feldman* doctrine.

**1. Two-Part Test**

*a. Adequate Legal Basis*

The complaint Lara filed alleged RICO violations, conspiracy to violate RICO, and 42 U.S.C. § 1985(2) and (3) violations. (Doc. No. 11.) Underpinning the complaint is Lara's claims of a massive conspiracy against his client constituting a pattern of racketeering activity. Seemingly any person involved in Chavez's trial was a member of the conspiracy with Rady as the mastermind of the scheme. Lara's theory asserts defendants' conspiracy hindered his client's access to a fair trial as it kept witnesses from testifying, and the judge—who was in cahoots with Rady—was biased and obstructed justice. (*Id.* ¶¶ 56–58.) Yet, plaintiffs cannot prove any cause of action filed as the complaint is replete with bold and conclusory allegations lacking supporting evidence or facts.

For example, Lara declares that the state court, from the preliminary hearing, was "eager to please the interests of Rady's Hospital, taking the role of an interested promoter in a vigorously partisan manner, rather than that of a detached magistrate, in obstructing the due course of justice." (*Id.* ¶ 58.) Yet, Lara fails to provide even one example of the

6

judge's bias or any facts supporting his conclusion. The entire complaint reads in the same fashion. As another example, plaintiffs fail to adequately plead RICO because they could not show how defendants continued to form an ongoing criminal enterprise, nor could plaintiffs demonstrate a pattern of racketeering activity.

Plaintiffs also are unable to allege a violation of both the RICO conspiracy statute and Section 1985(2) and (3) because the alleged conspiracy claims are tenuous.[2] As one example of the conspiracy to violate RICO, plaintiffs allege that certain named doctors were subpoenaed to appear and testify in the criminal trial. (Doc. No. 11 ¶¶ 48–49.) However, the doctors never appeared as their attorneys requested their appearance be excused due to "hardships." (*Id.* ¶¶ 49–50.) Lara claims that loss of money and taking care of current patients "are not legally valid" hardships and that the more likely reason the doctors failed to testify is because the doctors "conspired with each other" and Rady to deprive Chavez of his constitutional rights. (*Id.* ¶¶ 51–52.)

He, again, makes these claims without showing the doctors knew about any scheme taking place, or that they agreed to participate in a racketeering scheme. In fact, the allegations he provided appear to negate his conspiracy charge. Lara is simply wrong in asserting that financial and time constraints are not valid reasons to be excused from a subpoena. Indeed, he presented two legitimate reasons excusing the doctor-witnesses from testifying.

Taking the complaint overall, Plaintiffs failed to plead more than conclusory allegations. "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents*, 673

---

[2] The RICO conspiracy statute, in simple form, states: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. 1962(d). Section 1985(2) concerns conspiracies interfering with access to federal or state courts. *See Bretz v. Kelman*, 773 F.2d 1026, 1028–29 (9th Cir. 1985). Section 1985(3) prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws[.]" 42 U.S.C. § 1985(3).

7

F.2d 266, 268 (9th Cir. 1982); *see also Howard v. America Online Inc.*, 208 F.3d 741, 748–51 (9th Cir. 2000) (affirming dismissal of a RICO claim based on conclusory allegations that failed to set forth the requisite elements). Thus, Plaintiffs did not have an adequate legal basis for his complaint.

### *b. Reasonable Inquiry*

"The reasonable inquiry test is meant to assist courts in discovering whether an attorney, after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded." *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005). The Ninth Circuit has held that "an attorney violates [R]ule 11 whenever he signs a pleading, motion, or other paper without having conducted a reasonable inquiry into whether his paper is frivolous, legally unreasonable, or without factual foundation." *Unioil, Inc. v. E.F. Hutton & Co.*, 809 F.2d 548, 557 (9th Cir. 1986) (italics in original), *cert. denied*, 484 U.S. 822 (1987). Based on this Court's analysis under the *Heck* bar, its findings regarding the failure to plead the basic RICO elements, and the merely conclusory allegations alleging conspiracy, the Court finds it very unlikely Lara conducted "an objectively reasonable inquiry into the facts and law." *Holgate*, 425 F.3d at 677. The complaint is an improper attack of underlying criminal proceedings, lacks basic elements of each allegation, and is unsupported by facts or evidence. Moreover, Lara even had the foresight of the superior court's opinion regarding his claims, for which he was sanctioned. Instead of heeding that court's order, he doubled down and filed the instant motion.

### **2.** *Colorado River* **Doctrine**

Rady argues sanctions are appropriate because plaintiffs impermissibly forum shopped to avoid the adverse ruling of the superior court. (Doc. No. 28-1 at 12.)

Federal courts possess a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Only in exceptional cases will "the presence of a concurrent state proceeding" permit the district court to dismiss a concurrent federal suit "for reasons of wise judicial administration." *Id.* at 818. "To decide whether a particular case presents the

8

exceptional circumstances that warrant a *Colorado River* stay or dismissal, the district court must carefully consider 'both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise.'" *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 978 (9th Cir. 2011) (quoting *Colorado River*, 424 U.S. at 818). While the Court looks to eight factors in determining if dismissal is appropriate, the Court also considers "whether the second suit . . . is an attempt to forum shop or avoid adverse ruling by the state court." *Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989). In *Nakash*, the court stated, "after three and one-half years, Nakash has become dissatisfied with the state court and now seeks a new forum for their claims. We have no interest in encouraging this practice." *Id.*

Rady points to plaintiffs' own complaint as evidence of forum-shopping, citing this as the very reason plaintiffs dismissed the state law claims and filed in federal court. In the FAC, plaintiffs state they "dismissed the causes of action without prejudice due to plaintiff's intention to seek federal relief on federal causes of action and in the belief that the federal forum was a more professional, highly respected for the quality or its reasoned opinions, transparent, and less likely to be influenced by racial animosity and political influence than state courts." (Doc. No. 11 ¶ 68.) Like Nakash, it appears plaintiffs did indeed file in federal court in an attempt to avoid the forum that had tentatively ruled against them in the anti-SLAPP suit and had ordered sanctions. The Court finds plaintiffs' filing in federal court due to a general dissatisfaction with state court was improper forum shopping and also grounds for Rule 11 sanctions. *See Fransen v. Terps LLC*, 153 F.R.D. 655, 660 (D. Colo. 1994) (imposing Rule 11 sanctions for a "blatant example of forum shopping").

Thus, because there is no adequate legal basis for plaintiffs' federal claims, because Lara did not make a reasonable inquiry into the facts and law before filing this suit, and because plaintiffs' improperly forum shopped, the Court finds sanctions are appropriate. However, the Court reduces Rady's requested fee award amount as detailed below.

9

### 3. Sanctions Amount

The Ninth Circuit, generally, has adopted the lodestar approach when assessing attorney's fees. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008); *Bird v. Wells Fargo Bank*, No. 1:16–cv–01130–DAD–EPG, 2017 WL 4123715, at *1 (E.D. Cal. Sept. 18, 2017). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)). "The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (citing *Hensley*, 461 U.S. at 433).

Rady states "the total fees incurred by my office related to other actions defending against this lawsuit, including filing a Motion to Dismiss, total $4,103.50." (Doc. No. 28-2 at 4.) In determining this amount, Rady does not follow the lodestar formula as there is no itemization of hours worked and hourly rates applied. Rady only states that this amount is "reflected in time records," but does not attach those records. (*Id.*) Because Rady did not properly document this amount or categorize it by hours worked and rates claimed, the Court will not include it in an award. Next, Rady predicts it will spend "an additional 12 hours . . . drafting the reply to the motion for sanctions and preparing for the hearing, for an additional $2,100 in connection with other motions defending against this action." (*Id.*) However, because Plaintiff never responded to the sanctions motion, Rady never filed a reply. Moreover, the Court did not discuss the sanctions motion at the November 9, 2017 motion to dismiss hearing. Thus, this amount cannot be included either.

Regarding the sanctions motion, Rady states an associate spent 13.7 hours writing the motion at $175 an hour, totaling $2,397.50. (*Id.*) Another associate spent 4 hours finalizing the motion at $175 an hour, totaling $700. (*Id.*) These two amounts—totaling $3,097.50—meet the lodestar standard because it is correctly itemized by hours worked and rates claimed. Rady predicts it will spend "another 10 hours on the reply, preparing for and attending the hearing for an additional $1,750." (*Id.*) Again, because Rady never filed

a reply and no hearing was held on the sanctions motion, the $1,750 must be excluded as well.

Thus, the total amount of actual fees expended which meet the lodestar standard amounts to $3,097.50. The Court **GRANTS** defendants' motion for sanctions against Plaintiff's counsel in that amount. (Doc. No. 28.)

## V. CONCLUSION

The Court finds *Heck* bars plaintiffs' claims in federal court because a favorable ruling on any of his claims would necessarily undermine Chavez's underlying state court criminal conviction. Thus, the Court **GRANTS WITH PREJUDICE** both Rady's and Saunders' motions to dismiss. (Docs. No. 14, 25.) The Court also **GRANTS** sanctions against Plaintiff's in the amount of $3,097.50. (Doc. No. 28.)

**IT IS SO ORDERED.**

Dated: December 8, 2017

Hon. Anthony J. Battaglia
United States District Judge